UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| MANDA TRUMAN, | : | Case No. 3:16-cv-380 |
| --- | --- | --- |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

I. **Introduction**

Plaintiff Manda Truman brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on May 20, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #5).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since April 25, 2013. She was thirty years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). She has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[1]

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Hockensmith that when she woke up on April 25, 2013, her right eye was "stuck" and her left eye was wandering. (Doc. #5, *PageID* #92). She was extremely dizzy, could not walk, and when she tried, she fell down and/or threw up. *Id.* Dr. Merryman, Plaintiff's treating neurologist at the time, diagnosed Multiple Sclerosis. *Id.* at 103. She prescribed Avonex, an injection Plaintiff had to have at home every week. *Id.* at 92, 104. It caused her to feel like she had the flu two days out of every week. *Id.* at 92.

By the time of the hearing, Plaintiff had a new treating neurologist, Dr. Ontaneda, at the Mellen Center for Multiple Sclerosis at the Cleveland Clinic. *Id.* at 94. She sees him every three months. *Id.* He switched her medication from Avonex to an oral medication, Tecfidera, which she "seem[ed] to be handling better …." *Id.* at 94-95. It

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

does not, however, take away any of her symptoms. *Id.* at 98. Unfortunately, she may need to change medication again because she started having bleeding in her stomach. *Id.* at 94-95.

On a normal basis, "I'm very tired every day and my eyes will blur as the day goes on. I have pain in my legs and my arms, numbness, tingling in my hands and feet, and lately I've been getting these, like, I call them zaps … that come from my head down through my … they're kind of like a shock that just goes through." *Id.* at 97. The "zaps" were a new symptom, occurring a few times a day, that she had not told her doctor about. *Id.*

Plaintiff pain "will hurt all the way down to my bones like a burning …." *Id.* at 98. She takes a muscle relaxer that helps it. *Id.* She further explained, "I can move my arms and legs, but spasticity is the tightness of the muscle, like right before you get a Charley horse. I'll get pain, that pain that comes right before that. It stays in my [legs mostly.]" *Id.* at 107. She sometimes has problems feeling things with her hands or feet. For example, she has "trouble gripping things" and drops things. *Id.* She also has "some moderate problems" with tremors in her legs and left arm. *Id.* She also has loss of coordination that has caused her to fall. *Id.* at 107-08. "I walk crooked. I don't walk straight." *Id.* at 106. She can—within limits—walk up or down stairs, on uneven ground, and through a grocery store. *Id.* at 108. Her fatigues last all day and is not better at any specific time. *Id.* at 97.

Plaintiff also sees Dr. Jeffrey Bishop for depression and anxiety. *Id.* at 95. She sees him once per month and sees a counselor from his office twice a month. *Id.* at 95-96. He prescribes Lexapro, Cymbalta, and Ambien. *Id.* at 95. Plaintiff explained,

> I've always been a very, what I felt was a strong person, so it took me a long time before I'd admit that that was a problem. I think my husband made me go and get help. I don't go out and do things with friends at all. … I'm struggling with not having the control over myself, so I'm missing out on a lot of things with the kids, not going to their games and things like that, or even at home they want to play and I have to say, mommy can't.

*Id.* at 100-01.

Plaintiff works part time at Super Subby's. *Id.* at 86. She has worked there on and off since she was sixteen years old. *Id*. At the time of the hearing, she was working around ten hours per week. *Id*. She typically works from 11:30 a.m. to 2:30 p.m. three or four times per week. *Id.* at 94. She usually takes orders for the cashiers. *Id.* at 86. Before April 25, 2013, she worked full time and went to school full time. *Id*. She did not work at all between April 25, 2013 and November 2014 because she "was not physically able to." *Id.* at 92. She went back to work because she "had to." *Id.* at 93.

On the days that she does not work, she gets her children ready for school and then goes back to bed until her son gets home around 2:30 PM. *Id.* at 99. On days that she works, she gets her children ready for school, goes to work, and then comes home and rests until her son comes home. *Id*. In the evening, she tries to help her children with their homework. *Id*.

4

Plaintiff cannot read for long periods of time. *Id.* at 85. When she does read, it is usually her children's homework. *Id*. She reads books sometimes but has problems focusing on the words for long periods of time. *Id*. It hurts her eyes to read off a computer screen. *Id.* at 85-86. She explained, "I used to be very articulate with words, and my words will get scrambled a lot. I can't think of the word that I'm trying to use, which is very frustrating, and I'll have to read things numerous times before it registers, or even someone talking to me sometimes doesn't register. Like, I'll hear what they're saying but it's not, it doesn't click." *Id.* at 101. Plaintiff cannot sleep unless she takes Ambien, and sometimes with Ambien, she only sleeps for a few hours. *Id.* at 103.

Plaintiff lives in a house with her husband and four children—ages 5, 7, 10, and 13. *Id.* at 83. She has a driver's license and usually drives short distances three to four times per week. *Id.* at 84. She is able to shower and get herself dressed but she does not "always feel like doing it" because of her fatigue. *Id.* at 99. She reported having two to three good days and three to four bad days in a week. *Id.* at 105. On a good day, she is able to do laundry and other small chores around the house. *Id*. On a bad day, she lies in bed all day and does not do anything. *Id*. Plaintiff testified that she does not have any upper body strength. *Id.* at 101. She estimated she could lift twenty pounds if she had to, sit for "maybe an hour" and stand for an hour to an hour and one-half. *Id*. at 102.

**B.     Medical Opinions**

**i.     Sharon Merryman, D.O.**

Dr. Merryman, Plaintiff's treating neurologist from April 2013 to July 2014, included in her treatment notes the details of her discussion with Plaintiff concerning her

ability to work. *Id.* at 416, 509. Dr. Merryman opined, "I do not [believe] she could work full time without significantly increasing her fatigue…. Given her age and risk for relapse … disability is a more responsible choice than overly stressing her body out and increasing her risk of relapse." *Id.* at 509. She further noted that she told Plaintiff she needed to sleep eight hours per night, take a nap, and schedule rest periods throughout the day—all as fatigue prevention. *Id.*

### ii. Elizabeth Das, M.D., & Gerald Klyop, M.D.

Dr. Das reviewed Plaintiff's records on August 29, 2013. *Id.* at 116-25. She found that Plaintiff had one severe impairment, multiple sclerosis, and one non-severe impairment, visual disturbances. *Id.* at 121. She opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 122. She could stand and/or walk for a total of six hours in an eight-hour day and sit for six hours. *Id.* She could never climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, stoop, and crouch; and frequently balance. *Id.* She should avoid all exposure to hazards. *Id.* at 123. Dr. Das concluded Plaintiff is not disabled. *Id.* at 125.

On December 2, 2013, Dr. Klyop reviewed Plaintiff's records and affirmed Dr. Das' assessment. *Id.* at 138-49.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security

Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial

7

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since April 25, 2013.

Step 2: She has the following severe impairments: Multiple Sclerosis; Depression; Non ST Elevated Myocardial Infarction, Type 2 (NSTEMI Type 2); and Anemia.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … with the following limitations: (1) She can lift and carry 10 pounds occasionally. (2) She can stand/walk for 2 hours during a workday. (3) She can sit for 6 hours in a workday. (4) She cannot climb ladders/ropes/scaffolds. (5) She is limited to occasional stooping, kneeling, crouching, and crawling. (6) She is restricted to frequent balancing. (7) She cannot work at unprotected heights. (8) She [cannot] be exposed to heavy machinery. (9) She can do no commercial driving. (10) She is limited to simple, routine tasks. (11) She is limited to few changes in a work setting[] and to static-type jobs."

8

Step 4: She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #5, *PageID* #s 57-68). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 67.

V. **Discussion**

Plaintiff contends that the ALJ's theme—that Plaintiff is not under a disability "because, at intermittent times since the disability onset date, she worked part-time at a sub shop"—"is premised on faulty logic." (Doc. #7, *PageID* #660). Further, she asserts that he failed to properly evaluate her treating physician's opinion and failed to adequately account for her moderate limitations in concentration, persistence, and pace in the accepted hypothetical to the vocational expert at the hearing.

The Commissioner maintains that the ALJ reasonably assessed Plaintiff's complaints, the medical opinions, and her residual functional capacity.

A. **Dr. Merryman's Opinion**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

9

techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ Hockensmith assigned "little weight" to Dr. Merryman's opinion "that it would be a more responsible choice for [Plaintiff] not to work and go on disability to avoid the stress on her body which could exacerbate her multiple sclerosis. (Doc. #5, *PageID* #65) (citation omitted). Rather than addressing—or even mentioning—the treating physician rule, the ALJ includes a generic catch-all:

> Pursuant to Social Security Regulations, I have considered several opinions in the record from treating, examining, and

> reviewing physicians, and I have assigned the amount of weight to those opinions which I have determined is appropriate based on the consistency of the opinion with the evidence in the record regarding clinical evidence and diagnostic findings, plus factors such as the longitudinal treatment history with the claimant, the physician's relationship to the claimant, and the physician[']s particular qualifications or [specialization].

(Doc. #5, *PageID* #65).

This general approach to weighing medical opinions erroneously ignores the hierarchy established by the Regulations and fails to give any deference to treating physician's opinions. This constitutes error. *See* 20 C.F.R. § 404.1527(c)(2) ("[W]e give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations ….").

And, because ALJ Hockensmith did not address the treating physician rule, the Court cannot engage in a meaningful review of whether he properly applied it to Dr. Merryman's opinion. *Gayheart,* 710 F.3d at 377.

Nevertheless, the ALJ did provide some reasons for the weight he assigned Dr. Merryman's opinion. He observed that Dr. Merryman gave her opinion in July 2014 yet by November 2014, Plaintiff "was back at work, and she continues to work, albeit part-time. That job, however, is classified at the light exertion level and required extensive standing and walking on a full time basis." (Doc. #5, *PageID* #65).

11

This finding is both confusing and inaccurate. Perhaps most obviously, a part-time job that requires standing and walking on a full-time basis involves far less standing and walking than a full-time job. Additionally, Dr. Merryman did not say that Plaintiff could not work *at all*; she opined Plaintiff could not work *full time* without "significantly increasing her fatigue." *Id.* at 509. And, it is unreasonable to conclude that Plaintiff's position required extensive standing and/or walking when she only works for approximately three hours at a time and is able to sit down when she gets tired. *See id.* at 94, 102. Although ALJ Hockensmith questions whether Plaintiff worked ten hours per week because of conflicting statements she made to physicians, the record shows that—at least in 2014—Plaintiff worked less than ten hours per week. Specifically, she earned $519.22. *Id.* at 270. If Plaintiff made the same amount that she made at the time of the hearing ($8.20/hour), then she worked approximately sixty-three hours. When divided over the course of eight weeks (November and December 2014), she worked less than ten hours per week for those two weeks. Her ability to work so few hours per week is not reasonably probative of whether she can work full time.

Further, "Multiple sclerosis is an incurable, progressive disease subject to [] periods of remission and exacerbation." *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981). The fact that Plaintiff is able to work ten hours—or even thirty hours—per week does not lead to a reasonable conclusion that she can return to full-time work given the nature of multiple sclerosis. *See id.* at 192 ("The fact that plaintiff worked, however, is not necessarily substantial evidence of substantial gainful activity.") (citations omitted); *Wilcox v. Sullivan,* 917 F.2d 272 (1990) ("Wilcox should not be penalized because he had

12

the courage and determination to continue working despite his disabling conditions.") (footnote omitted).

The ALJ also found, "Dr. Merryman appears to have based [her] opinion solely on [Plaintiff's] complaints." (Doc. #5, *PageID* #65). This conclusion is not supported by substantial evidence. Dr. Merryman's notes document comprehensive physical exams of her cranial nerves, gait and stance, motor skills/coordination, reflexes, sensation, and skin. *Id.* at 432-34, 467-74, 507-09, 512-20. Further, Dr. Ontaneda, a neurologist for the Mellen Center for Multiple Sclerosis at the Cleveland Clinic, confirmed that the MRI of Plaintiff's brain was compatible with multiple sclerosis and concurred with Dr. Merryman's diagnosis. *Id.* at 500.

Additionally, it is not reasonable for ALJ Hockensmith to assume that Dr. Merryman relied solely on Plaintiff's subjective complaints because she did not indicate in any way that she relied only on Plaintiff's subjective reports and because physicians are trained to both consider and investigate subjective reports as opposed to blindly accepting them on face value. *See Felisky v. Bowen,* 35 F.3d 1027, 1040 (6th Cir. 1994) ("According to the Secretary, a physician's job is not to question his or her patient's statements, but is rather to match those statements with a diagnosis."). And, again, Dr. Merryman provided detailed notes of her physical exams of Plaintiff, and an MRI confirmed her findings.

ALJ Hockensmith also found that Plaintiff's statements to Dr. Koren do "not support Dr. Merryman's opinion that working would overly stress the claimant's body due to her MS." (Doc. #5, *PageID* #65). According to the ALJ, Plaintiff reported to Dr.

Koren "that she had no weakness, no abnormal fatigue, and no depression or anxiety …." *Id.* at 65. These observations are slightly misleading, as Dr. Koren's treatment notes contain inconsistent statements. For example, Dr. Koren, in the Review of Symptoms section, noted, "She reports no depression, no anxiety …." *Id.* at 629. However, in the physical exam portion, she notes, "Mental Status: active and alert and depressed; doing well on her meds and is thinking of weaning off." *Id.* In other words, despite Plaintiff report, Dr. Koren found that her mental status was depressed. Similarly, Dr. Koren does note "no abnormal fatigue." *Id.* Importantly, Dr. Koren did not indicate that Plaintiff had no fatigue—only that she had no *abnormal* fatigue. And, Dr. Koren included "Fatigue" as a diagnosis in her Assessment/Plan—confirming the presence of Plaintiff's fatigue and supporting the validity of Dr. Merryman's opinion. *Id.* at 630.

The explanations provided by ALJ Hockensmith fall short of the Regulations requirement to provide "good reasons." The Sixth Circuit "has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" *Cole*, 661 F.3d 931, 939 (6th Cir. 2011) (quoting *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." (citing *Wilson,* 378 F.3d at 546-47)).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Manda Truman was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

Date: August 18, 2017          *s/Sharon L. Ovington*
                                Sharon L. Ovington
                                United States Magistrate Judge